U.S. versus Harrison Good afternoon, Your Honor. Good afternoon, Your Honors. Brett Schweitzer, the Federal Defender's Office, here representing Mr. Harrison. At this time, I'd like to reserve three minutes for rebuttal. Yes, sir. Thank you. The court asked about the New Jones case from the Supreme Court, so I thought I'd start there. Our position is that while Jones is not determinative here or doesn't affect the ultimate result, it does, it is instructive insofar as it sort of underscores just how wrong the police were in their assessment of what constitutes abandonment for the Fourth Amendment. Now, Jones, of course, involved the issue of what's a search, and it did not reach the issue of whether a search is, whether the search in that case specifically violated the Fourth Amendment or required reasonable suspicion or a warrant or probable cause or whatever else. So it's a search case. Now, here, and what, of course, it said, the Supreme Court said, was not only is a search what sort of we might call a cat search, what everyone's been calling a search all along, let's not forget, there is also a trespass research. There will also, there will often be overlap between the two, but when there is a common law trespass, for the purposes of gathering information, that's a search too, even if perhaps in a particular case there wouldn't be a cat search. Now, here in our case, the government doesn't dispute on appeal. There was an issue below as to whether there was a cat search in this case. I'll call it cat search. And now we're on common ground on appeal. There was a search. That's not the issue. The issue we have here on appeal is, was it reasonable because the police made a reasonable mistake of fact as to whether the house was abandoned. And we're aware that you are of the view that this is a question of law and not of fact. And perhaps we can talk about that in a minute, but I am curious about one thing. I'd like to get on the table right away. Did the district court treat this as a matter of fact? I mean, it's a very brief order, but it reads or it seems to read as if the court is looking at this as a matter of fact and making a finding of fact, saying based upon the appearance of the property and the officer's knowledge of the property history, they understood it was abandoned. Well, I agree, Your Honor. It's a little bit difficult to tease out because there's no narrative. There's no opinion here. The district court does list as conclusion of law number four that the property appeared abandoned. Well, let's start with that. For what it's worth, for what headings are worth, I think what Judge Jordan just read was paraphrasing something that appears under conclusions of law, right? That's correct. That's conclusion of law number four. The last one of which is at the time they entered the property, the police had a good faith belief that it was abandoned. The other was what Judge Jordan read based upon the appearance of the property and the officer's knowledge of the property's history. The police acted reasonably in entering the property to investigate. That's correct, Your Honor. In our contention. Is a reasonable determination of that kind a matter of fact or is it a question of law or is it one of those combinations of the two that ultimately are more in the nature of a legal determination that's subject to binary review? It's just like Leon, just like abandonment, and whether this was a reasonable action by the police, it's a mixed question of fact, but the issue here where the mistake happened was on the legal end of things. And how we know that is because there are no historical facts at all that are in dispute here. No one's saying there's an issue as to what facts can be looked at properly, the interior of the house versus the exterior of the house, but setting that aside, there's no dispute as to facts. And what is clear from the cases after Rodriguez is if you've got that situation where you don't have a dispute of facts and all you have is did the officers bring to bear the correct legal standard here with respect to abandonment? That's an issue of law. And, of course, it's relevant here because... Is it? I guess that's the question, right? If the court says, and there's nothing in the record to dispute it, that the place was and had appeared to be, even ignoring the inside stuff, for months and months and months, it appeared that this was an abandoned property. It was a crack house. The door was always open. The windows were all boarded up. There was trash refuse everywhere. The only people that ever came out of it were people that didn't belong in it, and that this is something that the police were aware of, that this was, to all reasonable appearances, not a dwelling that anybody had any right to. It was just abandoned property. Now, if that is the view of the district court judge after hearing all the evidence, and it's on that basis that the district judge says, so it was a good faith reasonable mistake to think it was abandoned based on all that, where is the error in the district court's determination that they could reasonably believe that? Well, the error with respect to whether it's a mistake of fact or a mistake of law, we're looking at what the officers thought. So I think there's two issues there. Number one, what the officers thought was that the standard for abandonment, a house is abandoned. And if it looks like it's vacant, that's what one officer testified to. Or if it just doesn't seem habitable, that's what the other officer testified. And that is just, that's not the standard for abandonment under, for a house. Now, we have to remember here. There was a lot more than that, but, I mean, there was no running water, no electricity. The doors are always open.  Let me just clarify that, Your Honor. Under all of the circumstances presented to this officer, why was it unreasonable to conclude that this is an abandoned house? Let me jump to the facts for a moment. What Officer McCarthy testified to was that he was, in his patrol area, he knew this as a known drug residence. There were drug dealers hanging out. There are two Officers McCarthy, is this? That's correct. Officer McCarthy who had the earliest contact? Yes, Your Honor. By observing it over a period of time. That's correct. So he says this is a known drug residence. He said people are coming out. There's activity there every day. Now, this is not a parade of, you know, hundreds of people, a different person from day one to day two. He testifies at the record 46 to 47 in the appendix that these are the same people. So he's seeing a small group, or the same group of people, activity at this house every day. There's furniture on the front patio. There is two boarded windows. Some apparently are not boarded. I'm agreeing with the officer's assessment of whether this is abandoned or not, but why was it unreasonable for this officer, given having been there several times, throughout the summer of 2009, and the appearance of the structure and the fact there's no electricity or running water, why was it unreasonable to conclude this is an abandoned building? Again, Your Honor, I do believe that if we can engage on that level, the interior of the house is a separate issue. The running water, the police don't know any of that from the outside. Okay? And so once they go inside, there's another set of facts. We still don't believe it's enough to show abandonment, but there is another set of facts. Help me with something. A whole separate reason why we don't look at that. Help me with something that is only partially factual. What is abandonment? Abandonment here, and this is a critical point, it's important to remember we're talking about a house here. Ninety-nine percent of abandonment cases are effects cases. The dropped drugs, the pitched gun in flight or something like that. This is a house. With respect to a house, and here's where actually Jones is sort of illuminating on this, when we look into the common law principle, there is no abandonment of real property under the common law except by adverse possession. Twenty years of open and notorious occupation and hostility. Is it the obligation of the officer to stop what they're doing and do a property search? Every case, Your Honor, involving the small number of cases there are that aren't pitched effects, houses where the core of the Fourth Amendment lies, almost every case involves a simple step, which is- Almost every case. What do we make of the McKinney case, which is really close to this factually? Okay, so every case, almost every case except McKinney, involves asking a simple question. Okay, now McKinney. How do we deal with McKinney? It's very different on the facts. And what we have in McKinney is a situation where the police have a body warrant for a person, arrest warrant for a person, listing this house as the person's address. They show up. It looks run down. Abandoned. It looks abandoned. Okay, so what do they do? Do they go right in? No, they don't. First of all, they find out what the interior of the house looks like. They knock on the front door. They find out what the interior of the house is without breaching the house, number one. Number two, under Payton, they could just go in. That's another sort of issue. They have an arrest warrant. But they don't. I mean, that's not the issue on which the Eighth Circuit addresses this. That's true. And the key difference, I would suggest, Your Honor, is look at how these houses are different. What we have in our case is a house where there's daily activity. The police here thought this was a drug house. All the daily activity, as far as the police know, is illegal activity that's not associated with a property right. It's an abandoned crack house, as far as they know. That's the fine. The district court, leaving out the very important issue, which is at the center, I think, of Judge Smith's questioning, is that ultimately a question of fact or law? Is it abandoned? But the district court seems to accept, as a matter of fact, that the information coming to the police officers is indicating to them only abandonment. Not that these are bad people who live there or that these are bad people who rent and come and stay occasionally. But these are all people who have no right at all to be there. It's a crack house that's been abandoned and is being used only illegally by people who have no property interest. That seems to be the import of the district court's findings. How can we, am I wrong about that? And if I am wrong, that's important. Tell me why. And if I'm not wrong, that that's the import of the district court's findings, how do we discard those findings and just say, yeah, yeah, yeah, well, to any reasonable observer, there was nothing going on there that anybody could legitimately be doing? Well, Your Honor, the district court, of course, didn't address the issue of was this an error of fact or law, which is an important, important issue. Because if it's an error of law, if it's an error of law, it's a Fourth Amendment violation. There's no issue of how reasonable were the officers? Was it a close call? Is this a gray area or not? Were there two boarded windows or four? None of that comes in. Gotcha.  And that was critical to the analysis in McKinney, wasn't it, as to whether or not it was a reasonable mistake of fact? Well, in McKinney, the court calls it a mistake of fact. And I think the court's wrong with respect to that, and I think obviously wrong. I mean, this is a mixed issue. The standard for abandonment, that's a legal position. The police here testified for all the reasons we've already talked about. So, sure, if the court sort of wants to just follow McKinney in that regard, I think it would be error. However, with respect to, okay, let's assume, let's go to the facts here. Let's assume it's a factual issue. It's not at all, the court, this court does not owe, it does not owe anything based on the description of, in the district court's opinion with respect to that finding. And why that's important is because there's no, when you look at the record here, there is no indicia of abandonment under the proper standard, number one. And number two, even when, even considering the facts, the open door, Officer McCarthy testified, this is an exterior door. As soon as they walk in that door, it's an apartment situation. The apartment door is closed. This is, the main problem here with the district court's finding is that where is the limitation? Anytime there's a drug activity at a house with a boarded window or trash out front that we, you know, a police officer can go in without a warrant, that's, that's, that's, I would suggest a very sort of dangerous situation. It's a very big slippery slope we have here from a house that appears to have vagrants to houses that are in disrepair or houses that are burned out, which the Supreme Court has said require a warrant to enter into. Roberts. You have reserved four minutes. Three minutes. Three minutes. Yes. Thank you. Mr. Salzberg. Good afternoon, Your Honor. May I please support Robert Salzberg for the government? Your Honor, there's a lot of confusion on this record in talking about mistake of fact, mistake of law. With all respect to my friend, Mr. Schweitzer, I'm having a lot of trouble following the argument in his brief, his reply briefing today. What we're, the main thing I want to talk about, of course, I want to answer the court's questions. The main thing I want to talk about is the exclusionary rule. That's what we're here to enforce. And what the exclusionary rule depends on is whether the officer's made a reasonable mistake or not. You can call a mistake a fact. You can call a mistake a law. Really? It doesn't make a difference? It doesn't. And the, we sure pinned a lot on it in, in our Rodriguez case. I just, I mean, there was. I think you're probably referring to Delfin-Cofina. Delfina, right. Right. The court thought it was important in Delfin-Cofina to decide what it was dealing with and ultimately decided it was a mistake of fact and didn't have to resolve mistake of law. I'm here to address today what, what it would matter if it were a mistake of law. And the Supreme Court could not be clearer that whatever the mistake is, the exclusionary rule does not exist to punish the reasonable mistakes of officers. What the Supreme Court has, and even since Delfina-Cofina, over and over, in Herring, in Hudson, in Davis, the Supreme Court is sending a loud and clear message. And what that message is, just to quote Herring, is that to trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it and sufficiently culpable that such deterrence is worth the price paid by the justice system. How about, how about people walking into a, into a house without a warrant because they think it looks trashy? You know what, you, for my benefit, just for my benefit, you could start with the slippery slope argument because oftentimes that's a kind of a throwaway. But in this case, you know, I think it's, it's a pretty big step to say, well, we're going to entrust the police officers on the beat to decide whether they think that house is sufficiently trashy looking that they can just walk right in. You know, it's got boarded up windows, we don't like that, go on in. What, where's the, where's the limit to your that house sure looks crummy argument? We're absolutely not saying that, Your Honor. And the limit are the rulings of this court and the Supreme Court, which will draw a line well before that. But the way in which we draw lines, as we all know in our adversary system, is by addressing the specific facts of specific cases. All right. And the specific facts of this case include the fact that one of the officers, McCarthy? Matthew McCarthy. Robert McCarthy. First one. Robert McCarthy, the first one, knew of this building, knew of this structure, knew of its condition, had been through it, and had weeks or months to ascertain the ownership status of it, at least, and took absolutely no steps in that regard at all. I mean, the assumption that it was abandoned, whatever that means factually or legally, was an assumption he adhered to without any checking at all from the point of his first contact with the property through his ultimate walking in and executing a search, carrying out a search. Right? Right. So the record is there. Those are facts. So the record is there's Matthew McCarthy that we're talking about, who's that officer who had the first contact. And, yes, he did take those steps and was not required to. Could he have done it? Absolutely. Would it be better if he did it? He wasn't required to because you're allowed to walk in if it looks abandoned to you. Well, no. Again, I prefer, Your Honor, if I may, to address the specific facts. If there's trash in the front yard, no, you can't walk in someone's house. If someone's been away from the house for a day, no, you cannot walk in that house. It's easy to do that, that when one of the officers, McCarthy, or one of the other officers, contacted a fellow officer about obtaining a search, he contacted the tax records office like that and ascertained ownership. Well, but just as a side note, Your Honor, I don't know if the Court has had the chance yet to read the testimony of Ms. Hopkins. I read it from start to finish on the airplane this morning. I'm sure you did. And it's remarkable testimony. And what it shows, of course, in this particular case is had somebody done that inquiry, found Ms. Hopkins' name and found her, you wouldn't have learned anything from her. Well, you didn't learn anything from what you asked me to understand either. Exactly. But I'm not talking about that. Well, but that's what would have happened. I'm talking about what was not done and what could have been done. In fact, nothing was done. But what I'm saying, Your Honor, what we actually know here is if it had been done, the officer would have been in no better shape or had no more information than he did to start. But my main point. Well, why can't we say that that's a reasonable step to take? Well, it's a reasonable step. Whether you actually learned something or not. Absolutely. But the law, my main point, Your Honor, is that the law has never required that the police take every necessary step. What the law does require is that the police act reasonably. And the presumption is before you walk into a building, you get a warrant. Especially a dwelling. That's true. But what Officer Matt McCarthy testified, and this was accepted, I would suggest, by the district court, what he testified is that this house was always in the same condition throughout the summer, every day, every time he saw it, every time he went in. And that condition was not trash in the front yard or a missing window. That condition was front door perennially open, boarded up windows, trash in front and back. He talked about kicking people out of the property. Exactly. That suggests people are there. Well, they're there because Somebody had to kick them out. He testified that he knew what they're there for. They are drug addicts. He said the house smelled of urine. There is feces smeared in the bathtub. There's no running water. There's no electricity. They lived terribly. Okay. We'll give you all that. And leaving aside the issue that Mr. Schweitzer has quite rightly pointed to, which is there's a first time he walks in without a warrant, right? So just set aside the whole issue of how much can the police rightly rely on in saying, hey, I've been in there a dozen times, even though you maybe were never supposed to be in there a dozen times. Set that aside for a second. If society is prepared to recognize a reasonable expectation of privacy on behalf of somebody who wants to live in squalor, why is it up to the police to decide, you know what? And in this instance, in fact, the district court says, yeah, there's a renter. I'm fine with it as a matter of fact. He had a reasonable expectation of privacy. Why would it be a good thing to sanction police behavior that says, well, if it looks really ratty to you, walk on in? Because, Your Honor, again, I didn't write these rules. And the test, according to the Supreme Court, is reasonableness. And the test is that if the officers did act reasonably, the exclusionary remedy does not apply. Your Honor is absolutely correct. We could write a rule that says no matter what condition the house is, it could be on fire and we require a warrant before an officer enters. That could be the rule, but it's not. Well, that actually is the rule. I mean, not if it's on fire, but Michigan v. Clifford says even after there's been a fire, you don't get to walk in without a warrant. That's correct. Why is it different if it's still structurally there even if it's been trashed and we say we're leaving it to you, we're leaving it to you, the officer on the beat. We've got such confidence in you that that whole business about presumptively unreasonable to walk into property doesn't hold if you don't think it looks good enough. Well, no, because what the courts have said is we are leaving it to the officers if it's abandoned property. Abandoned property unquestionably the officer can walk into and not only can, but should. If you have a nuisance on the block of an abandoned property that's been taken over by vagrants or drug addicts or people breaking the law, I think any neighbor would want the police to go through on a regular basis. So the question then becomes do they reasonably think it's abandoned? I'm sorry, does it matter whether the door is closed or whether it was opened? That's only one factor, Your Honor. It certainly supports our position that the door was opened, but there's so much more here. And I disagree that there's any infirmity in considering what the officer had seen before. That was never raised below. The officer said that he saw this every time, and that's the record that the court accepted. You say that was never raised below. I have to ask you, the discussion that they had in the briefing, I wish I could lay my hand right on it, seemed to indicate to me that they had raised that below. Well, I don't agree.  However, there's one sentence that the defense quoted where the defense lawyer did say, oh, and there had to be a first time. But the defense lawyer never argued to the district court that it could not consider the prior entries of Officer Matt McCarthy. That was never argued. It was never a theory of suppression. If it had been argued, we could have addressed it. But even so, Officer Matt McCarthy's testimony was very clear that this is something he saw all the time. Another thing you can look at, also, is Go back to the Michigan v. Clifford and that line of case. Because I am interested. You say we expect police officers to go into abandoned property, et cetera. I mean, it's certainly true that there are administrative warrants that are given to agencies to inspect for habitability, and that there are instances where there are emergency situations and fears of crimes going on. We expect police to go in there. Can you point me to a line of cases that says we expect police to walk into property because they've made the judgment they think it's abandoned? I mean, you've given us McKenna, but McKinney, what's the line of cases that you're talking about? I'm not. I'm saying that an officer is permitted to enter or seize any abandoned property. I'm suggesting in the arguments of the court myself that this is proper police conduct. To suggest that this is unusual is very unfair. I think it's not inappropriate for this court to be cognizant of the reality in the city of Philadelphia and many other urban areas. And what I was about to say is that at trial, and the court can consider the trial testimony as well on a suppression issue, Officer Matt McCarthy talked about this as well, and he said this is a common problem. He said this is an abandoned crack house. This is a well-known, serious problem in many areas in this area. I don't think anybody, Mr. Zosmer, is suggesting to you that the police aren't entitled to investigate crime in a crack house. Let's not go there because that's not the discussion that they've put on the table, nor is it one that I think anybody on this panel has asked you about. The question is, where it's admitted that there's no exigency and it's admitted that there was no warrant or any attempt to get a warrant, is a police officer's judgment there on the spot, granted he's had experience with the property, is that enough to dispense with the Fourth Amendment's presumption that you don't enter a dwelling without a warrant? It doesn't mean we don't want them investigating crime. Do you get to walk in without a warrant? What are you relying on besides McKinney for the principle you're articulating here, which is a thrown-away garbage bag with drugs or a dropped gun is the same as a house? I am relying on United States v. Abel, which says that abandoned property is not protected by the Fourth Amendment. And factually, I am relying on the fact that, regrettably, many thousands of houses are abandoned. It is similar to a trash, that there are economic situations that lead houses to be utterly abandoned, and those then become criminal problems and nuisance problems. Is it to be dealt with in the ordinary course of police work by getting warrants or through licensing and inspection folks by getting administrative warrants? I mean, are you suggesting that the only way to deal with abandoned property issues in the city of Philadelphia is to give the police carte blanche to start walking into them? Oh, of course not. Of course there are other remedies. I'm not following your argument. But we are not sitting here as legislators to decide what are the appropriate steps to be taken. We are applying the jurisprudence of the Supreme Court of the Fourth Amendment. And the jurisprudence, there are two essential steps. And I rise or fall on these two steps. Step one is that abandoned property is not protected by the Fourth Amendment. That's United States v. Abel. And step two is that if an officer reasonably makes a mistake in thinking that the exception applies, then the exclusionary rule does not apply. That's the argument here. And it doesn't matter whether it's a mistake of fact or a mistake of law, because the Supreme Court in its very recent decisions has repeatedly recognized that this is a draconian sanction with significant social costs, and it will only be applied where the officer has acted with a greater degree of culpability than simply making a reasonable mistake. The district court here on the basis of the record found a reasonable mistake, and I would say that its reasoning is unimpeachable. We could certainly have a very good discussion, and I think we have, about other scenarios that might come up where the evidence of abandonment might not be as clear. The evidence of abandonment here is overwhelming. When you have a house that an officer knows people are urinating and defecating in because there's no running water, there's no electricity, that's an abandoned crack house in the city of Philadelphia. Now it turns out, according to the district court, they were wrong. They made a mistake because they didn't know that this fellow was paying cash, allegedly, to this woman who wouldn't testify in order to use his part of the crack house. That's it. That's where we are. Are all those other approaches appropriate and warranted? Of course. But we're here to address the Fourth Amendment issue. These officers had every reason to think this was abandoned, and therefore they were permitted to make a good faith mistake, which is what the district court said they made, and a quite unusual one at that. Thank you, Mr. Salazar. Thank you very much, Your Honor. Mr. Schweitzer. Thank you. Abel involved things thrown into a trash can as someone was leaving their hotel room. This case involves a house. Now my friend says there are lots of nuisance properties in Philadelphia. That's correct. There are lots of nuisance properties in Philadelphia, and this is a common occurrence, and this is precisely why we need police action governed by a judicial process, because not all of those houses are abandoned. Not even this one was abandoned. Why don't you answer Mr. Zosmer's point, which is, as I understand it, it was eminently reasonable for the district court on this record to decide that what happened here was that the police made an entirely good faith mistake in not knowing about Mr. Harrison's property interest. It was entirely a good faith thing for them to think this was an abandoned property, and since it was an entirely good faith thing for them to think it was an abandoned property, the mistake is not one which the exclusionary rule is deployed to remedy, because that's just not the way it works. Well, Mr. Zosmer makes it easy for himself by referencing all the interior facts, just as they do in their brief. Now, when we look at what is permissible to look at here, it's not that close of a call. Are you acknowledging by that argument, Mr. Schweitzer, that it really could have been a reasonable mistake if you looked at the interior facts? No, if you look at the interior facts, then what the district court did was okay because it was a good faith mistake, and if it's a good faith mistake, game up, exclusionary rule doesn't apply? No, I'm not, Your Honor. Of course not. Then don't run down that path. Take us where you want us to go. Okay. So if we look at everything, it still turns on first two things. First, it's absolutely correct that it doesn't matter how dirty a place is. That does not equate with I don't live here. Is there ever a point at which the police could look at property and say a house and say abandoned and walked in? In your theory, could they ever walk in and say nobody's living here? Frankly, Your Honor, if you can't go into burned-out houses, I would say there is Could there possibly be some occasion where just the mere sight of a house lets you walk into it? I can't think of the facts. I'm not going to say there isn't one. However, what's important here is that it is clearly not the case that this was a mistaken issue of fact, and that is critically important. So no matter what happens with the facts, because the police officer didn't make any mistakes as to the historical facts here, what the exclusionary rule turns on and what the existence of a Fourth Amendment violation turns on here is what kind of mistake did they make. Now, when we look at that, what kind of mistake did they make? What we have is, of course evidence is suppressed when we have a mistake of law, except for one circumstance, and that's in Leon. Why? Because an officer has gone to a magistrate and gotten a warrant, and the court has said, okay, if you make a mistake of law as to probable cause under that circumstance, we're not going to suppress the evidence because you went and you got a warrant. That's the preference for warrants. If my colleagues will indulge me for a second. How is this different from the consent cases, from Rodriguez, where it's a mistake? You think they've got to consent to somebody with authority? They don't. But the Supreme Court has said, hey, mistakes happen. Because consent is not a factual issue. Consent in Rodriguez was a legal issue. The factual issue in Rodriguez that the police got wrong is, did she live there? The police knew perfectly well that if she lived there, she could consent. So they made no mistake of law. And this is right in the Supreme Court opinion. They say, what was the mistake here? She resided there. She said she had a key. She said she has clothes in the apartment. Everything else, they were presented with facts that would support a consent search. And now it turned out, she had moved out two weeks ago. That's Rodriguez. Now, if all they had to do here, and my friend Mr. Zalsmer says, well, it's a joke whether they should have called Ms. Hawkins. What she, I would assume, would have said, if they had made the simple step of contacting her, is what she said in the first instance at the hearing. Not my place. No one's entitled to be there. In which case, they can go in. If they have, from the record owner, a disclaimer of ownership in the property, and they have, from her, I didn't authorize anyone to be there. That's a reasonable mistake as to fact about abandonment. But that's not what happened here. They didn't take that simple step. They took it upon themselves to say, this place is trashed. We're going to go in. Thank you. Mr. Spicer, thank you very much. Thank you both for excellent arguments. We'll take the case under advisement. We will adjourn.